IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANTAGE TRAILERS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0361 |
| | § | |
| BEALL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Beall Corporation's Motion to Dismiss Count One of Plaintiff's Amended Complaint Pursuant to Federal Rule 12(b)(6) and the Amended Complaint entirely Pursuant to Federal Rule 12(b)(1) (Document No. 28), Defendant's Motion to Stay (Document No. 49), and Plaintiff's Motion for Leave to File an Offer of Proof (Document No. 47). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I. Background

This is a trademark suit involving an aluminum bottom-dump trailer design. Beall Corporation ("Defendant") is the holder of U.S. Trademark Registration No. 1,622,364 (the "Mark"), issued November 13, 1990, covering the design of a bottom-dumping truck trailer with conical, tapered front and back ends. Document No. 18

ex. B. Defendant markets and sells the truck as the "Beall Bullet." Id. Plaintiff has produced a trailer similar in appearance to the Beall Bullet. Id. ex. A.

A previous suit on the same claim was dismissed for lack of jurisdiction because a live case or controversy was not present when that suit was filed. *See* Memorandum and Order entered in <u>Vantage Trailers Inc. v. Bealle Corp.</u>, Civil Action No. 06-3008, Document No. 79 (hereinafter "<u>Vantage I</u>"). The decision was based on the fact that Plaintiff had no fixed trailer design at the time suit was filed, and Defendant's marketing and sales activities were merely preliminary negotiations contingent upon finalizing the design. *See* <u>id.</u>

Plaintiff appealed the dismissal of <u>Vantage I</u> to the Fifth Circuit, *see* <u>Vantage I</u>, Document No. 85, and also filed the instant suit, which is substantially similar to <u>Vantage I</u>. Defendant now contends that (1) Plaintiff's cause of action for false marking should be dismissed pursuant to Federal Rule 12(b)(6); and (2) Plaintiff's entire Amended Complaint should be dismissed because this case still does not involve a live case or controversy under Article III. Document No. 18.

II.   Discussion

A.   Defendant's Request to Dismiss Plaintiff's False Marking Cause of Action Pursuant to Rule 12(b)(6)

1.   Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

3

of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1964-65 (citations and internal footnote omitted).

2. Discussion

Plaintiff's Amended Complaint alleges that Defendant knowingly and falsely advertised on its website that its "Beall Bullet" trailers were "patented," intending to deceive the public. Document No. 18 at 6 ¶¶ 22-23. It further asserts that Defendant's "false advertisement was published each time the website was accessed" by an internet user, and therefore *each hit* the website received constitutes an instance of false advertising. Id. ¶ 24. Defendant denies Plaintiff's false marking claim and "moves here to dismiss [Plaintiff's] claim that it is entitled to $500 for each instance in which 'such advertisement was transmitted for display by a web browser.'" Document No. 28 at 6 (quoting Document No. 18 ¶ 24). Defendant contends that Plaintiff's claim for recovery of $500 per hit of Defendant's website, that allegedly misrepresented its Beall Bullet trailer as "patented," is legally flawed. Document No. 28 at 6.

The false marking statute provides:

4

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number important that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). Although "[a]ny person" may sue for the penalty, half of any recovery must go to the United States. *See* id. § 292(b). A pleader may establish a *prima facie* case of false marking under the statute by making three allegations: (1) an article was falsely marked or advertised with the word "patent" or any word or number that imports that the article is patented, (2) the article so marked or advertised was an unpatented article, and (3) the marking or advertisement was made with the intent to deceive the public. Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005).

Although Plaintiff cites no case law supporting its theory that each hit on Defendant's website counts as an offense under section 292(a), that alone is insufficient to support dismissal under Rule 12(b)(6). Facially, Defendant's attack on Plaintiff's false marking claim pertains to Plaintiff's damages calculation, not the claim itself. Whether Plaintiff may recover damages for each hit to Defendant's website is not pertinent to the 12(b)(6) analysis; Rule 12(b)(6) disposes of claims based on insufficient legal theories assuming all the facts alleged are true. *See* Twombly, 127 S. Ct. at 1964-65 (stating 12(b)(6) requires that

5

"[f]actual allegations must be enough to raise the *right to relief above the speculative level . . . .*"). Here, Plaintiff has alleged facts, taken as true, that support all three elements of a *prima facie* case of false marking under section 292(a). Thus, Plaintiff has stated a claim that the representations on Defendant's website constitute at least one "offense" under section 292(a).

B.  Defendant's Request to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(1)

   1.   Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *See* Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002). In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations. *See* id. When accompanied by

supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack. Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. Id.

    2.   Case or Controversy

Defendant contends that no active case or controversy underlies Plaintiff's requests for declarations of non-infringement and invalidity of Defendant's trademark. Document No. 28 at 8. According to Defendant, the Court lacks jurisdiction because Plaintiff "had not developed a fixed trailer design" when Defendant sent a cease-and-desist letter to Plaintiff on July 17, 2006[1] or when Plaintiff filed Vantage I on September 25, 2006. Id. at 10. Therefore, Defendant reasons, no case or controversy exists because there was no threat of litigation when it sent the letter to Plaintiff. Id.

The Court's previous order in Vantage I explained in detail that the Supreme Court recently eliminated the requirement that a

---

[1] In June or July, 2006, Defendant's Vice President sent to Plaintiff a letter dated July 17, 2006, advising Plaintiff of Defendant's registered Mark, and warned that Defendant would pursue legal action against Plaintiff if it "place[d] any trailers into service that violate any of the Beall trademarks." Document No. 28 at 8.

7

declaratory judgment plaintiff have "reasonably anticipated litigation" before filing a declaratory judgment action. *See* Vantage I, No. 06-3008, Document No. 79, at *6-9 (discussing MedImmune, Inc. v. Genetech, Inc., 127 S. Ct. 764, 771 (2007)). After MedImmune, "a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." Sony Elecs., Inc. v. Guardial Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed. Cir. 2007). Rather, a court looks to the totality of the circumstances to determine if there is a live dispute between the parties when the case is filed. *See* MedImmune, 127 S. Ct. at 771 (adopting a totality of the circumstances test); Steffel v. Thompson, 95 S. Ct. 1209, 1216 n.10 (1974) (stating that the party seeking declaratory relief must establish the existence of jurisdiction at the time the suit is filed); Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007) (same).

Contrary to Defendant's contention, the fact that Plaintiff had no fixed design when Defendant *sent the letter* to Plaintiff is not pertinent to the jurisdictional analysis in this case, nor was it the basis for the ruling in Vantage I. Instead, the question when suit was filed is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." MedImmune, 127 S. Ct. at 771 (internal quotation marks omitted). When this suit was filed, Plaintiff had designed, sold, and advertised a trailer that allegedly infringed on Defendant's Mark. *See* Document No. 18 at 2, ex. A. Even the Court's opinion dismissing Vantage I observed that Plaintiff in 2007--after Vantage I was filed, but before this suit commenced--actually manufactured a trailer, and posted pictures of it on its website. *See* Document No. 42 exs. 5C, 5C-1. Moreover, in September 2007, Plaintiff delivered a trailer to a customer, and, according to Cliff McWilliams, Plaintiff's President, was in the process of manufacturing five additional trailers for that customer. Id. exs. 4 ¶ 5, 4-D. Plaintiff's allegations that the design for its trailer facially resembles the design in Defendant's trademark registration and that they are direct competitors in the domestic U.S. market, present a dispute that is sufficiently "definite and concrete" to support jurisdiction.[2] *Compare* Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 881-82 (Fed. Cir. 2008) (finding a case or controversy in a patent infringement case when plaintiff had successfully manufactured and delivered an allegedly infringing device), *with* Lang v. Pac. Marine & Supply Co., 895 F.2d 761, 764 (Fed. Cir. 1990) (finding no case or controversy because accused

---

[2] Plaintiff also moves for leave to file an offer of proof to provide confidential statements made at a settlement conference during Vantage I in order to support its argument that a case or controversy exists (Document No. 47). This motion is DENIED as MOOT.

infringing ship hull would not be ready for at least nine months after the complaint was filed).

### 3. Prudential Concerns

Defendant alternatively asserts that it is appropriate for this Court to dismiss Plaintiff's case because Plaintiff lacks standing based on two prudential concerns: (1) Plaintiff is engaging in improper "claim splitting"; and (2) the trademark dispute should be resolved by the Trademark Trial and Appeal Board under the doctrine of primary jurisdiction. These grounds are analyzed in turn.

#### i. Claim Splitting

The doctrine against claim splitting allows district courts to dispose of needless and duplicative lawsuits. *See* Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985). Dismissing this case will not further those ends. Vantage I was dismissed *without prejudice* because an actual controversy did not exist at the time it was filed. Vantage I, No. 06-3008, Document No. 79, at 16-17. As explained above, the jurisdictional analysis in this case differs because it is based on circumstances existing *when this suit was filed*. *Cf.* Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218-19 (10th Cir. 2006) ("It cannot be gainsaid that even a dismissal without prejudice will have a preclusive effect on the

10

standing issue in a future action. The preclusive effect, however, is one of issue preclusion (collateral estoppel) rather than claim preclusion (res judicata)). Otherwise stated, the district court's standing ruling precludes [plaintiff] from relitigating the standing issue on the facts presented, but does not preclude his claim about the validity of the ordinance."). The subject matter only anticipated when Vantage I was filed has now matured into an actual case or controversy over which the Court now has jurisdiction. The doctrine of claim splitting does not apply in this instance.

### ii. Primary Jurisdiction

Defendant also urges the Court to decline jurisdiction over this case pursuant to the doctrine of primary jurisdiction, asserting that Plaintiff's claims regarding the validity of Defendant's trademark are more suitably resolved by the Trademark Trial and Appeal Board ("TTAB"). Document No. 28 at 15-16. The doctrine of primary jurisdiction consists of "a set of precedents that guide courts in deciding when an issue should be resolved in the first instance by an agency that has special competence to address it." PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 80 (1st Cir. 1996) (citing United States v. W. Pac. R.R. Co., 77 S. Ct. 161, 165 (1956)). It "does not speak to the jurisdictional power of the federal courts," but rather, "simply structures the

proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." United States v. Bessemer & L.E. R. Co., 717 F.2d 593, 599 (D.C. Cir. 1983) (quoting Cheyney State Coll. Facility v. Hufstedler, 703 F.2d 732, 736 (3d Cir.1983)); *see also* Forte v. Wal-Mart Stores, Inc., No. 02:07-cv-155, 2007 WL 2461831, at *3 (S.D. Tex. Aug. 26, 2007) (Head, J.) (characterizing the doctrine as "based on principles of federalism and comity"). If applicable, the doctrine "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." Reiter v. Cooper, 113 S. Ct. 1213, 1220 (1993).

When, as here, no proceeding is pending before the TTAB, the interests in prompt and efficient resolution in a single forum of trademark infringement, trademark validity, and other issues weigh strongly in favor of exercising jurisdiction. *See* Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 853-54 (2d Cir. 1988). Moreover, even if a parallel administrative proceeding was underway, courts have consistently declined to defer to the TTAB when, like here, additional claims are raised that cannot be resolved by the agency. *See* Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1162-63 (9th Cir. 2007); PHC, 75 F.3d at 80. In PHC, the First Circuit reversed a district court's decision to defer to a pending TTAB proceeding by abstaining from adjudicating a

12

declaratory action involving trademark infringement. PHC, 75 F.3d at 80. The court reasoned that the federal court should litigate the infringement claim because it had express jurisdiction to challenge or affirm a registered trademark without prior resort to the board, and that the court, unlike the TTAB, had authority to grant the requested injunctive and compensatory relief for the infringement claim. Id.; Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc., 274 F. App'x 399, 403 n.4 (5th Cir. 2008) (citing PHC). In *dicta*, the court remarked that in cases where the validity of a mark is attacked as a companion to an infringement claim, federal courts should hear both claims "if the issues underlying the two claims overlap" to the extent that a dual analysis is more efficient. PHC, 75 F.3d at 80.

Here, whether Defendant's mark was properly registered implicates both Plaintiff's non-infringement claim and Plaintiff's claim that Defendant's mark was fraudulently procured. *Cf.* Rhoades v. Avon Prods, Inc., 504 F.3d 1151, 1165 (9th Cir. 2007) (reversing a district court's decision to abstain from adjudicating a declaratory action involving a noninfringment claim because the district court would have to resolve all issues the TTAB would, and then some) (quoting PHC). Because no proceeding is pending before the TTAB and because this dispute will be more efficiently resolved in a single forum, the Court refuses to decline jurisdiction under the doctrine of primary jurisdiction.

C.  Defendant's Request to Dismiss Vantage's Invalidity Claim Based on Functionality Pursuant to 12(b)(1) & 12(b)(6)

Defendant also relies on the "incontestability" of its trademark as grounds for dismissing, or, alternatively, declining jurisdiction over, Plaintiff's claim that Defendant's Mark should be cancelled because it is functional. Document No. 28 at 13. A product's appearance (called its "trade dress") does not qualify for trademark protection if it has functional features. Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH, 289 F.3d 351, 356 (5th Cir. 2002); *see also* J. THOMAS MCCARTHY, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 7:68 (4th ed. 2008). "[T]he primary test for determining whether a product feature is functional is whether the feature is essential to the use or purpose of the product or whether it affects the cost or quality of the product." Eppendorf, 289 F.3d at 356 (citing TrafFix Devices, Inc. v. Mktg. Dsplays, Inc., 121 S. Ct. 1261-62 (2001)). According to Defendant, it does not matter whether, or to what extent, the Mark is functional because its trademark registration became incontestable in 1996. Id.

Defendant raises multiple challenges to Plaintiff's attempt to cancel the Mark for being functional. First, Defendant asserts that this Court should "decline jurisdiction" over Plaintiff's claim because the functionality doctrine did not become an enumerated basis for canceling incontestable marks under section

14

1064 until 1998--after Defendant's Mark became incontestable.[3] *See* Document No. 28 at 13-15. Second, for the same reason, Defendant asserts that Plaintiff's claim should be dismissed because it does not state a claim for which relief can be granted. *See* Document No. 38 at 22. In other words, Defendant argues that the 1998 amendment does not apply *retroactively* to marks that became incontestible before its passage.

Defendant cites no authority, nor could this Court find any, holding that courts have discretion to *decline jurisdiction* solely because the trademark at issue is incontestable. Therefore, the Court refuses to "decline jurisdiction" on this ground.

The Fifth Circuit has not addressed Defendant's second argument, that the 1998 amendment to section 1064(3) does not apply to Defendant's Mark because it became incontestable before 1998. The Seventh Circuit, however, has rejected the argument in Eco Manufacturing LLC v. Honeywell International Inc. *See* 357 F.3d 649, 651 (7th Cir. 2003) (Easterbrook, J.) ("[I]ncontestability does not avoid the question of whether the [trade dress] is functional."). The Seventh Circuit explained that the 1998 amendment to section 1064(3) is not retroactive at all. "A law is retroactive when it alters the legal consequences of completed

---

[3] On October 30, 1998, Congress amended Section 1064 of the Lanham Act and explicitly added functionality as an enumerated basis for cancelling incontestable trademarks. Pub. L. No. 105-330, 112 Stat. 3064 (October 30, 1998).

acts." Eco Mfg., 357 F.3d at 652 (citing Jahn v. 1-800-FLOWERS.com, Inc., 284 F.3d 807, 810 (7th Cir. 2002)); *see also* Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir. 2006) ("[W]here a clear statement from Congress is lacking, there is an impermissible retroactive effect where the application of the statute 'attaches new legal consequences to events completed before [the statute's] enactment.'") (quoting Landgraf v. USI Film Prods., 114 S. Ct. 1483, 1499 (1994)). The 1998 amendment to section 1064(3), by contrast, applies to *prospective relief*. Eco Mfg., 357 F.3d at 652 ("'When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.'") (quoting Landgraf, 114 S. Ct. at 1499). Plaintiff here, like the plaintiff in Eco Manufacturing, is seeking to apply the functionality requirement of the 1998 law to Defendant's conduct in 2008 and beyond. *Cf.* id. Thus, like the mark in Eco Manufacturing, Defendant's Mark is subject to attack by the functionality requirement of the current version of section 1064(3).

D.  Defendant's Request for Dismissal of Plaintiff's Fraudulent Procurement of Trademark Claim Pursuant to Rule 9(b)

Defendant contends that Plaintiff's claim of fraudulent procurement, which Plaintiff asserts as a basis for invalidating Defendant's trademark, must be dismissed because Plaintiff has "failed to meet its burden" of substantiating the falsity of the

16

representations made.  Document No. 28 at 17.  Generally, the Federal Rules only require that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S. Ct. 992, 998 (2002) (citing FED. R. CIV. P. 8(a)).  For fraud claims, however, the pleader must "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  The particularity required under Rule 9(b) must include "enough facts to illustrate the who, what, when, where, and how of the alleged fraud."  <u>Carroll v. Ft. James Corp.</u>, 470 F.3d 1171, 1174 (5th Cir. 2006) (internal quotation marks omitted).  A dismissal for failure to plead fraud with particularity according to Rule 9(b) is treated as a dismissal under Rule 12(b)(6).  <u>Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 901 (5th Cir. 1997).

According to the Amended Complaint, in July, 1989, the trademark examiner rejected Defendant's application for registration of its proposed Mark as "functional," explaining that a proposed mark that "embodies a design feature of the goods which is superior to other available designs" and "provides a competitive advantage to the user" is "*de jure* functional" and therefore not registrable.  <u>Id.</u> at 2-3.  In its response to the examiner on June 7, 1989, Defendant allegedly represented to the trademark examiner

that alternative designs *were* available for features embodied in its proposed Mark, and that those alternatives were "equally efficient" and "no more costly to produce" than its own proposed design, and therefore its application was registerable. Id. at 2-3. According to the Amended Complaint, Defendant's response was a misrepresentation, made with the intent to deceive, because it was contrary to Defendant's advertisements that allegedly touted the lower cost and superior features of the Beall Bullet compared with competing trailers. Id. at 4-5. Therefore, the Amended Complaint alleges that Defendant made a misrepresentation to the trademark examiner, that Defendant's misrepresentation responded directly to the examiner's concerns, and that such was calculated to induce issuance of the registration, which registration was then issued. Plaintiff has sufficiently pled facts supporting Plaintiff's allegations of fraud in the procurement of the trademark.

E.   Defendant's Motion to Stay Pending Appeal of Vantage I

Defendant further requests this Court to stay proceedings in this case pending appeal of Vantage I, which the Court denies.

If the Fifth Circuit (or the Supreme Court) finds that a case or controversy existed in Vantage I, and remands that case, it may then be consolidated with this case. *See* FED. R. CIV. P. 42(a). If Vantage I is affirmed, time will have been wasted by delaying

proceedings in this case.  The need to reach a just and speedy resolution will not be served by staying this case.

### III. Order

Accordingly, it is

ORDERED that (1) Defendant Beall Corporation's Motion to Dismiss Plaintiff's Amended Complaint (Document No. 28) is DENIED, and (2) Plaintiff's Motion for Leave to File and Offer of Proof (Document No. 47) is DENIED as MOOT.  It is further

ORDERED that Defendant Beall Corporation's Motion to Stay Pending Appeal of Vantage I (Document No. 49) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 27th day of October, 2008.

                                                EWING WERLEIN, JR.
                                       UNITED STATES DISTRICT JUDGE